WO

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ali Reza Dehrizi, | No. CV-15-00008-PHX-ESW |
| Plaintiff, | **ORDER** |
| v. | |
| Jeh Johnson, et al., | |
| Defendants. | |

Pending before the Court is Defendants' Motion for Summary Judgment (Doc. 24) on Plaintiff's claim for a writ of mandamus.  The Federal Court has jurisdiction pursuant to 28 U.S.C. § 1331.  The parties have consented to proceeding before a Magistrate Judge pursuant to Rule 73, Fed. R. Civ. P. and 28 U.S.C. § 636 (c) (Doc. 15).

After reviewing the parties' submissions, the Court finds that genuine issues of material fact exist concerning the reasonableness of Defendants' delay in the adjudication of Plaintiff's application for adjustment of his citizenship status.  Defendant is not entitled to summary judgment as a matter of law.  Defendants' Motion for Summary Judgment will be denied for the reasons set forth herein.

### I. PROCEDURAL HISTORY

Plaintiff is a citizen of Iran who was admitted to the United States as a refugee on December 12, 2005.  On January 22, 2007, Plaintiff filed a Form I-485 with U.S. Customs and Immigration Services ("USCIS"), seeking adjustment of his citizenship status to permanent resident pursuant to 8 U.S.C. § 1159(a)(1).  Plaintiff's adjustment

application remains pending due to a hold placed upon it by Defendants pursuant to USCIS policy[1] which allows the government to hold for future exemption consideration the applications of individuals who are otherwise inadmissible for having engaged in terrorist activity. 8 U.S.C. § 1182 (a)(3)(B)(i)(I).  On January 5, 2015, Plaintiff filed a "Complaint for Writ in the Nature of Mandamus Verified Complaint for a Writ in the Nature of Mandamus" (Doc.1).  Plaintiff alleges that Defendants have unreasonably delayed the processing of his adjustment application and requests that the Court require federal agents to process to a conclusion Plaintiff's application for adjustment of status to permanent resident.  Defendants filed an Answer (Doc. 16).  All issues are joined.

## II. FACTS

Until July 7, 1995 and while Plaintiff lived in Iran, Plaintiff distributed fliers and pamphlets critical of the Iranian government.  As part of his refugee application in a translated sworn statement dated August 22, 2001, Plaintiff describes his "political activities" in Iran as receiving and distributing pamphlets, newspapers, and articles with his friend Farhad Zandi and Mehran Bor.  (Doc. 29 at 25-27).  The literature distributed by Plaintiff was critical of the Iranian government.  Mehran Bor was Plaintiff's "connection to other member (sic) of the MOJAHEDIN party."  (*Id*. at 26).  Because Mehran Bor "had given the name of memebers (sic) of the Mojahedin party to the secret police," Plaintiff went into hiding.  (*Id*.).  He thereafter fled Iran with a false passport.  Plaintiff immigrated to Germany, converted to Christianity, and sought refugee status in the United States.

In Plaintiff's interview dated August 22, 2001 with Immigration and Naturalization Services ("INS") Officer Scott Miller, Officer Miller noted that Plaintiff

---

[1] The Deputy Director of USCIS issued a series of memoranda providing guidance regarding cases involving inadmissibility pursuant to the Consolidated Appropriations Act ("CAA"), 8 U.S.C.§ 1182(a)(3)(B).  (Doc. 24-1 at 9-10).  The memoranda instructed adjudicators to withhold adjudication of cases that could potentially benefit from the exercise of the Secretary of Homeland Security's ("DHS") discretionary authority under the CAA.  The Deputy Director specifically instructed that applications be held for applicants deemed inadmissible due to Tier III terrorist organization activity.  (*Id.*).

was active in the distribution of fliers or pamphlets "given by the Majahadeen (sic)."  (*Id.* at 42).  Officer Miller found Plaintiff's testimony to be credible and found Plaintiff to be a refugee as defined by law.  Plaintiff was granted refugee status and admitted to the United States in 2005.

Two years after immigrating to the United States as a refugee, Plaintiff sought adjustment of his citizenship status to that of a permanent resident by filing the appropriate application, Form I-485.  Plaintiff submitted all information required by the application.  Pursuant to 8 C.F.R. § 209.2, USCIS has completed its review process, including (i) a Federal Bureau of Investigation ("FBI") fingerprint check, (ii) a check against the DHS-managed Interagency Border Inspection System ("IBIS"), and (iii) an FBI name check.  At some date undisclosed to the Court, USCIS placed a hold on Plaintiff's adjustment application due to the information contained in Plaintiff's refugee application regarding Plaintiff's distribution of literature critical of the Khomeini regime which Plaintiff received from the Mujahidin-e Khalq Organization ("MEK").  On the basis of the information contained in Plaintiff's refugee application, USCIS found that Plaintiff engaged in activity which materially supported the MEK.

Until 2012 when the U.S. State Department removed the MEK from its list of Foreign Terrorist Organizations and while Plaintiff distributed fliers in Iran, the United States considered the MEK to be a terrorist organization as defined by 8 U.S.C. § 1189.  Though the MEK was not officially designated as a foreign terrorist organization until October 8, 1997, the MEK's activities prior to its designation qualified the MEK to be an undesignated, or Tier III, terrorist organization.  Defendants assert that by distributing pamphlets for the MEK, Plaintiff provided material support to a terrorist organization.  Because Defendants have concluded from a review of Plaintiff's refugee application that Plaintiff provided material support to a terrorist organization, Defendants placed a hold on Plaintiff's application for adjustment of status to permanent resident pursuant to internal policy.

The hold on Plaintiff's application for adjustment of citizenship status is indefinite.  By placing a hold on Plaintiff's application, DHS can consider Plaintiff for future discretionary exemptions to terrorist-related inadmissibility grounds.  Were Defendants to adjudicate Plaintiff's application at this time, Defendants state that Plaintiff's application likely would be denied on the basis of inadmissibility for terrorist activity.  Therefore, Defendants argue that the hold is benign and may inure to Plaintiff's benefit at some indeterminate time in the future.  There are currently approximately 2,800 pending I-485 adjustment of citizenship status applications involving Tier III terrorist organizations placed on hold for determination of exemption eligibility.  Whether DHS will exercise its authority to exempt Plaintiff from terrorist inadmissibility grounds is discretionary with DHS.  The USCIS has not yet determined whether MEK meets the qualifications of the exemption or whether Plaintiff will be eligible for consideration under this exercise of the exemption authority.  Defendants have provided no timeline within which these determinations will be made.

In Plaintiff's affidavit dated August 4, 2015, Plaintiff contests the accuracy of his translated sworn statement contained in his refugee application.  Plaintiff denies knowing that the literature critical of the Khomeini regime which Plaintiff distributed in Iran was from or for the MEK.  Plaintiff denies having been a member or supporter of the MEK.  He denies knowing the political affiliation of Mehran Bor, and he denies that his friends were members of the MEK.  Finally, Plaintiff denies any intent to support a terrorist organization, terrorist activity, or violence.  Therefore, Plaintiff does not believe that his application should be denied, and he seeks final adjudication of it.

### III. LEGAL STANDARDS

#### 1. Summary Judgment

Summary judgment is appropriate if the evidence, when reviewed in a light most favorable to the non-moving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ.

P. 56(a).   Substantive law determines which facts are material in a case and "only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "A fact issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Villiarimo v. Aloha Island Air, Inc.,* 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson,* 477 U.S. at 248).  Thus, the nonmoving party must show that the genuine factual issues "'can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'"  *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (quoting *Anderson*, 477 U.S. at 250).

Because "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . [t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor" at the summary judgment stage.  *Anderson,* 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158-59 (1970)); *Harris v. Itzhaki,* 183 F.3d 1043, 1051 (9th Cir. 1999) ("Issues of credibility, including questions of intent, should be left to the jury.") (citations omitted).

When moving for summary judgment, the burden of proof initially rests with the moving party to present the basis for his motion and to identify those portions of the record and affidavits that he believes demonstrate the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  If the movant fails to carry his initial burden of production, the non-movant need not produce anything further.  The motion for summary judgment would then fail.  However, if the movant meets his initial burden of production, then the burden shifts to the non-moving party to show that a genuine issue of material fact exists and that the movant is not entitled to judgment as a matter of law.  *Anderson,* 477 U.S. at 248, 250; *Triton Energy Corp. v. Square D. Co.,* 68 F.3d 1216, 1221 (9th Cir. 1995).  The nonmovant need not establish a material issue of fact conclusively in his favor.  *First Nat'l Bank of Ariz. v. Cities Serv.*

*Co.,* 391 U.S. 253, 288-89 (1968).  However, he must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v.Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (internal citation and emphasis omitted); *see* Fed. R. Civ. P. 56(c)(1).

Finally, conclusory allegations unsupported by factual material are insufficient to defeat a motion for summary judgment.  *Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Soremekun v. Thrifty Payless, Inc.*, 502 F.3d 978, 984 (9th Cir. 2007) ("[c]onclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment").  Nor can such allegations be the basis for a motion for summary judgment.

**2. Adjustment of Citizenship Status for Refugees**

Pursuant to 8 U.S.C. § 1159(a)(1), an alien granted refugee status who has been physically present in the United States for one year and is admissible may apply for adjustment of his citizenship status to permanent resident. USCIS "has jurisdiction to adjudicate an application for adjustment of status filed by an alien . . . ." 8 C.F.R. § 245.2(a)(1).  "The decision may be favorable or unfavorable, but a decision must be made."  *Wang v. Chertoff*, No. CIV 07-077-TUC-GEE, 2007 WL 4200672, at *2 (D. Ariz. Nov. 27, 2007).  Neither the statute nor the regulations governing the refugee adjustment of status process delineate a time frame within which USCIS must adjudicate a Form I-485 application for adjustment of status.  *See* 8 U.S.C.§ 1159(a)(1); 8 C.F.R. § 209.1.

Plaintiff bears the burden of proving admissibility.  *See* 8 C.F.R. § 209.2. Pursuant to 8 U.S.C. § 1182(a)(3)(B)(i)(I), an alien is inadmissible if he "has engaged in terrorist activity," which includes providing material support to  a terrorist organization. *See* 8 U.S.C. §§ 1182 (a)(3)(iv) (defining "engage in terrorist activity"), 1182 (a)(3)(B)(iii) (defining terrorist activity), 1182 (a)(3)(B)(iv) (defining "tiers" of terrorist organizations).

Although not officially listed by the U.S. State Department as a Foreign Terrorist

Organization until 1997, it is undisputed that the MEK was considered to be an undesignated, or Tier III, terrorist organization by the United States government at all times relevant to this action.  8 U.S.C. §1189; s*ee also Bojnoordi v. Holder*, 757 F. 3d 1075, 1077-78 (9th Cir. 2014) (holding that "the statutory terrorism bar applies retroactively to an alien's material support of a 'Tier III' terrorist organization").

Under the Consolidated Appropriations Act, 2008, Pub.L. 110-161, 121 Stat 1844 (December 26, 2007) ("CAA"), the Secretary of Homeland Security and the Secretary of State have the discretionary authority to exempt terrorist-related inadmissibility grounds related to aliens seeking an adjustment of status as well as to exempt undesignated or Tier III terrorist organizations from being considered terrorist organizations.  *See* 8 U.S.C.§ 1182 (d)(3)(B)(i).  The MEK is not one of the ten listed exempt terrorist organizations in the CAA.  The process by which discretionary exemption authority is weighed and decided necessitates careful consultation among the Secretary of Homeland Security, the Secretary of State, and the Attorney General regarding issues of national security and foreign policy, as well as humanitarian concerns.  *Id*.  Despite the laborious nature of the exemption process, the Secretary of DHS and the Secretary of State have issued 18,296 discretionary exemptions in cases involving terrorist related inadmissibility grounds between 2006 and June 2014.  (Doc. 24-1 at 12).

### 3. Administrative Procedure Act ("APA")

The APA provides that any "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."  5 U.S.C. § 702.  "Agency action" includes the failure of an agency to act.  5 U.S.C.§ 551(13).  Agencies are required to conclude matters pending before them in a "reasonable" time.  5 U.S.C. § 555(b).  Courts may "compel agency action unlawfully withheld or unreasonably delayed."  5 U.S.C.§ 706 (1).  Under the APA, Plaintiff bears the burden of proving that an agency "failed to take a discrete agency action that it is required to take."  *Norton v. Southern Utah*

1    *Wilderness Alliance,* 542 U.S. 55, 64 (2004). [2]

2         To determine if an agency has unreasonably delayed action on a matter before it,

3    the Ninth Circuit has adopted a six-factor test, or the TRAC factors, in assessing whether

4    relief under the APA is appropriate. *See Telecommunications Research & Action v. FCC*

5    (*"TRAC"*), 750 F. 2d 70, 80 (D.C. Cir. 1984); *Brower v. Evans*, 257 F. 3d 1058, 1068 (9th

6    Cir. 2001). The Court must balance all six factors. They are:

> (1) the time agencies take to make decisions must be
> governed by a rule of reason, (2) where Congress has
> provided a timetable or other indication of the speed with
> which it expects the agency to proceed in the enabling statute,
> that statutory scheme may supply content for this rule of
> reason, (3) delays that might be reasonable in the sphere of
> economic regulation are less tolerable when human health
> and welfare are at stake; (4) the court should consider the
> effect of expediting delayed action on agency activities of a
> higher or competing priority, (5) the court should also take
> into account the nature and extent of the interests prejudiced
> by delay, and (6) the court need not find any impropriety
> lurking behind agency lassitude in order to hold that agency
> action is unreasonably delayed.

17   *TRAC*, 750 F. 2d at 80 (internal citations and quotation marks omitted).

## IV. DISCUSSION

19        While the ultimate decision by the government to grant or deny a refugee's

20   application for adjustment of citizenship status is discretionary, the speed by which the

21   government does so is not. *See Hassan v. Chertoff*, 593 F. 3d 785, 788-89 (9th Cir. 2010)

22   (finding that under 8 U.S.C. § 1252(a)(2)(B)(ii) the court lacks jurisdiction to review the

23   government's denial of an application for adjustment of status); *Beyene v. Napolitano*,

---

25        [2] Plaintiff seeks relief under the APA, 5 U.S.C.§ 706; the Mandamus and Venue
26   Act ("MVA"), 28 U.S.C.§ 1361; and the All Writs Act, 28 U.S.C.§ 1651. The Supreme
     Court has construed a claim for writ of mandamus "in essence" as a claim for relief under
     the APA, as the relief sought is essentially the same under each statutory scheme. *See*
27   *Independence Min. Co., Inc. v. Babbitt*, 105 F. 3d 502, 507 (9th Cir. 1997) (citing *Japan
     Whaling Ass'n v. American Cetacean Soc'y*, 478 U.S. 221, 230 n. 4 (1986)). Therefore,
28   the Court analyzes Plaintiff's claim under the APA.

No. C12-01149 WHA, 2012 WL 2911838, at *3 (N.D. Cal. July 13, 2012) (finding that the "pace of adjudicating an adjustment application" is not discretionary). "Indeed, many courts in the Ninth Circuit have determined, after *Hassan*, that federal courts have jurisdiction to review the government's failure to adjudicate a status adjustment application." *Khan v. Johnson*, 65 F. Supp. 3d 918, 924 (C.D. Cal. 2014) (concluding that the government has a nondiscretionary duty to adjudicate adjustment of status applications within a reasonable time); *see also Kashkool v. Chertoff*, 553 F. Supp. 2d 1131, 1141-42 (D. Ariz. 2008) (finding that "pace at which USCIS adjudicates I-485 applications is nondiscretionary" and mandamus jurisdiction exists). The Court finds that Defendants have a nondiscretionary duty to decide Plaintiff's Form I-485 application within a reasonable period of time. *See Islam v. Heinauer*, 32 F. Supp. 3d 1063, 1069 (N.D. Cal. 2014) ("*Islam II*"). Defendants may not indefinitely delay a decision mandated by law. *See Singh v. Still*, 470 F. Supp. 2d 1064, 1067 (N.D. Cal. 2007); *Wang*, 2007 WL 4200672, at *3 (finding that "[t]he timing of the adjudication process is not a matter over which the USCIS has unfettered discretion.").

The Court will analyze each TRAC factor in determining whether there are genuine issues of material fact regarding the reasonableness of the time Defendants have spent failing to act on Plaintiff's adjustment of citizenship status application.

### 1. First Factor: Rule of Reason

It is undisputed that nine years have passed since Plaintiff filed his Form I-485 with USCIS. "[M]any courts applying the TRAC factors have declined to find that delays exceeding six years are reasonable." *Islam II*, 32 F. Supp. 3d at 1072; *see also Khan*, 65 F. Supp. 3d at 929 (citing Ninth Circuit cases which have found delays of less than four years to be reasonable, but six years or more to be unreasonable). A delay of nine years weighs in Plaintiff's favor. However, the Court must also consider the source of the delay. *See Mugomoke v. Curda*, No. 2:10-cv-02166 KJM DAD, 2012 WL 113800, at *4 (E.D. Cal. Jan. 13, 2012) ("length of delay alone is not dispositive"); *Singh*, 470 F. Supp. 2d at 1068 (courts also look to "source of the delay").

It is undisputed that Plaintiff provided all the necessary paperwork for his application.  It is also undisputed that Defendants are unable to estimate the time within which they will decide the application due to the nature of the hold they have placed upon it.  The hold could well be never-ending.  Though the hold may ultimately benefit Plaintiff, and despite the deliberative process necessitated by Defendants' policy and the exemption statute itself, the Court finds that holding the application indefinitely for the consideration of an exemption that may or may not come to pass at some future date does not comport with a rule of reason.  Therefore, the Court concludes that the first TRAC factor tips in Plaintiff's favor.

### 2.  Second Factor: Statutory Timetable

There is no statutorily mandated timetable for adjudicating Form I-485 applications.  *See* 8 U.S.C. § 1159(a); 8 C.F.R. § 209.1.  However, there is a non-binding congressional policy statement that "[i]t is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of an application."  8 U.S.C.§ 1571(b).  While the Court finds this statute to be instructive, the second TRAC factor only slightly favors Plaintiff.  *See Khan*, 65 F. Supp. 3d at 930 (synthesizing cases which found the "sense of Congress" to be highly relevant but finding the second TRAC factor to be of "little consequence").

### 3.  Third and Fifth Factors: Human Health and Welfare and the Interests Prejudiced by the Delay

Because the third and fifth TRAC factors overlap, they are analyzed here together.  This case involves human health and welfare, rendering "delays that might be reasonable in the sphere of economic regulation . . . less tolerable . . . ."  *TRAC*, 750 F.2d at 80.  Plaintiff continues to "sit in limbo" as he awaits the adjudication of his request for change of citizenship status.  (Doc. 30 at 4).  Plaintiff alleges that he is "unable to stabilize his life in the United States because his lack of permanent resident status leaves him feeling insecure and anxious.  He has lost work time and opportunities and a life of normalcy because of his lack of permanent status."  (Doc. 1 at 5).  Plaintiff's interests in finality are significant.

However, Defendants argue that Plaintiff's ability to work and travel remains unimpeded. Defendants stress that Plaintiff's application will likely be denied if decided now, whereas an exemption could benefit Plaintiff in the future. Therefore, Defendants argue that the delay created by the adjudication hold does not prejudice Plaintiff, but rather merely inconveniences him. *But see Mugomoke*, 2012 WL 113800, at *5 (presuming a plaintiff knows consequences of denial of application and infers harm of delay is significant).

The Court also recognizes that national security interests in a case such as this are high, and Defendants' interests in fully complying with the congressional mandates of the CAA and USCIS policy are compelling. Therefore, balancing the competing interests of all parties, the Court concludes that the third and fifth TRAC factors do not weigh heavily in either side's favor. *See Khan*, 65 F. Supp. 3d at 931 (concurring with the reasoning of the Court in *Islam II*, 32 F. Supp. 3d at 1073, which found in the case of a former Tier III terrorist organization member "important interests at stake for both parties" and that "these factors do not weigh heavily in either party's favor").

### 4. Fourth Factor: Effect of Expediting Delayed Action

The fourth TRAC factor requires the Court to consider the effect of requiring an agency to expedite its delayed action on the agency's activities of a higher or competing priority. *TRAC*, 750 F. 2d at 80. Defendants argue that expediting adjudication of Plaintiff's delayed application infringes upon Defendants' exercise of discretionary exemption authority. However, the Court finds that requiring Defendants to timely adjudicate a Form I-485 application does not dictate to Defendants how or whether to exercise the exemption authority. Nor is Plaintiff seeking to change USCIS policy. Plaintiff merely seeks a final determination made within a reasonable period of time. Therefore, the Court finds that this factor tips in Plaintiff's favor. *See Islam II*, 32 F. Supp. 3d at 1074 (finding the fourth factor favored Plaintiff); *Qureshi v. Napolitano*, No. C-11-05814, 2012 WL 2503828, at *4 (N.D. Cal. June 28, 2012) (weighing fourth factor in plaintiff's favor because plaintiff did not seek to force the application of an exemption

or a change in USCIS policy).

**5. Sixth Factor: Bad Faith**

The sixth TRAC factor cautions that "the Court need not find any impropriety lurking behind agency lassitude."   *TRAC*, 750 F.2d at 80.   This factor has been interpreted as requiring the Court to determine whether any impropriety or bad faith has caused an agency's delay.  *See Khan*, 65 F. Supp. at 932.  It is undisputed that Defendants have processed to conclusion thousands of exemption authorizations in factually similar cases under USCIS policy.   The exemption process is laborious, requiring detailed analysis among agencies.   There is no evidence presented of bad faith or impropriety driving the delay in adjudication of Plaintiff's application.   Therefore, the Court finds that the sixth factor weighs in Defendants' favor.

## V.  CONCLUSION

Because the Court finds on balance that several TRAC factors favor Plaintiff, several are neutral, and one tips in favor of Defendants, genuine issues of material fact exist as to the reasonableness of the delay necessitated by Defendants' hold on Plaintiff's I-485 application.  Therefore, Defendants are not entitled to judgment as a matter of law.

**IT IS ORDERED** denying Defendants' Motion for Summary Judgment (Doc. 24).

Dated this 21st day of January, 2016.

_____

Eileen S. Willett
United States Magistrate Judge